IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAUL R. RYLEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 09-00446-N |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff Paul R. Rylee filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that he was not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI") under Title II and XVI of the Social Security Act (the "Act"). This action has been referred to the undersigned Magistrate Judge (doc. 18) to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.Pro.73 (doc. 15) and pursuant to the consent of the parties (doc. 16). The parties waived oral arguments (docs. 15 and 17). Upon consideration of the administrative record (doc. 9), and the parties' respective briefs (docs. 10, 11), the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

I. Procedural History.

Plaintiff filed an application for DIB and SSI on July 12, 2006, claiming an onset

of disability as of March 30, 2006 (Tr. 82, 90).[1] In his Disability Report, plaintiff alleged disability due to "[l]ower back pain/bilateral hip and leg pain" (Tr. 100). Plaintiff's applications were denied on September 1, 2006 (Tr. 41, 49-53). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ")(Tr. 63), which was conducted on November 20, 2007 (Tr. 13-32). The ALJ issued an unfavorable decision on January 25, 2008 (Tr. 41-48). The ALJ found that the plaintiff retained the residual functional capacity ("RFC") to perform light work except work that will allow no more than moderate and occasional limitations in posture and no more than occasional exposure to heights or extreme cold or hot temperatures; that there were other jobs in significant number in the national economy that plaintiff could perform; and that he was not disabled within the meaning of the Act (Tr. 43-48). The Appeals Council denied plaintiff's request for review on June 19, 2009 (Tr. 5-8), thereby making the ALJ's decision the final decision of the Commissioner. *See*, 20 C.F.R. §§ 404.981, 416.1481 (2009).[2]

    II.    <u>Issues on Appeal</u>.

    1.    Whether the ALJ erred in failing to analyze plaintiff's obesity under Social Security Ruling ("SSR") 02-01p.

    2.    Whether the ALJ erred by not performing a "Function by Function" analysis of plaintiff's exertional and postural limitations in violation of SSR 96-8p.

---

[1] Plaintiff contends he "filed for . . .[DIB] and [SSI] on June 26, 2006, citing pages 33 to 34 of the Social Security Transcript. The Disability Determination and Transmittal documents located at pages 33 and 34 of the transcript actually state that the filing date was "06/28/06." This discrepancy, however, does not affect the outcome of this litigation.

[2] All references to the Code of Federal Regulations ("C.F.R.") are to the 2009 edition.

3. Whether the ALJ erred by failing to follow the medical findings and opinions of plaintiff's treating orthopedist.

4. Whether the ALJ erred by substituting his own medical opinion over that of plaintiff's treating orthopedist in finding that plaintiff can perform light work.

III. Findings of Fact.

A. Background.

Plaintiff was born on August 28, 1970 (Tr. 82, 86). He was 37 years old at the time of the administrative hearing on November 20, 2007 (Tr. 15-16). Plaintiff went to the ninth grade in school and has not obtained a GED (Tr. 16). Plaintiff has a past work experience as a heavy equipment operator and carpentry worker (i.e., scaffold builder and frame carpenter) (Tr. 18, 24, 29). The record reflects that the plaintiff last worked in 2006 as a heavy equipment operator (Tr. 18).

B. Relevant Medical Evidence.

Plaintiff injured his back at work during May 2003 and sought treatment from Tim S. Revels, M.D. at the Alabama Orthopaedic Clinics (Tr. 155). A June 2003 MRI revealed "loss of signal intensity in degenerative disc with dehydration of L2-L3, L3-L4, L4-L5, and L5-S1 multiple discs" (Tr. 163). The June 2003 MRI also revealed "a left lateral herniation at L4-L5 far lateral outside the neural foramen [and] a degenerative bilateral paracentral bulge at L5-S1 effacing the anterior nerve sac" (Tr. 163). Dr. Revels reported the following results of his physical examination of the plaintiff on October 1, 2003:

> Low Back: The patient can stand in an erect posture has lumbosacral spasm bilateral with decreased range of motion of the lumbar due to pain and stiffness. No angular or rotational deformity. No CVAT. Extremities: All four extremities are neurologically intact, no identified nerve damage, neuro deficit, weakness, or atrophy. Does have subjective numbness following L5-S1 dermatomal distribution. With the above there is no finding of a gait abnormality, except for having antalgic gait. No ataxia and no findings of myelopathy.

(Tr. 163). Dr. Revels also reported that, prior to this appointment on October 1, 2003, plaintiff had received two lumbar epidurals locally with no change in symptoms (Tr. 164). Dr. Revels recommended "a left L4 and L5 selective independent nerve blocks in two separate visits" and reported that plaintiff agreed to this plan (Tr. 162). The first of these nerve blocks was administered on October 20, 2003 (Tr. 159) and the second was administered on November 3, 2003 (Tr. 161). On November 21, 2003, plaintiff returned to Dr. Revels for a follow-up appointment and reported a reduction of pain as a result of the nerve blocks (Tr. 157). A Functional Capacity Examination (FCE) was performed on December 15, 2003 (Tr. 155), which was reported by Dr. Revels as establishing that plaintiff could occasionally lift 50 lbs., frequently lift 25 lbs., and constantly lift 10 lbs (Tr. 155, 156). Dr. Revels further stated that plaintiff "will be able to perform frequent standing, sitting, and walking, occasional stair ramp, and ladder climbing, occasional challenge of balance, occasional repetitive squatting, occasional stooping and bending, unrestricted turning of the neck, occasional turning and twisting of the lower back, occasional kneeling or crawling, occasional reaching overhead, side to side, and down, frequent reaching out to the side, unrestricted use of the hands and feet" (Tr. 155, 156).

Dr. Revels declared that plaintiff was at maximum medical improvement from his work injury and has "a 5% whole body impairment due to having a prior preexisting lumbar degenerative disc disease pattern that was aggravated from the . . . on the job injury" (Tr. 155). Plaintiff continued treatment with Dr. Revels through July 2005,[3] when he began to see Dr. Robert Zarzour (Tr. 193). Dr. Revels' treatment notes reflect that plaintiff was treated in a conservative manner with medication and physical therapy, and that no functional limitations other than those listed in the 2003 FCE were assessed (Tr. 155-57, 162-64).

Plaintiff began seeing Maria Young, M.D. on January 22, 2004, for treatment of his diabetes and back pain (Tr. 174-178, 253-256). Plaintiff thereafter presented himself to Dr. Young for follow-up visits in 2004 on February 5 (Tr. 170-172, 249-251), March 4 (Tr. 165-167, 244-246), April 1 (Tr. 196-199, 278-281), and June 23 (Tr. 200-202, 282-284). In 2005, plaintiff saw Dr. Young on January 10 (Tr. 201-204, 283-286) and July 13 (Tr. Tr. 207-210, 289-292).[4] Plaintiff returned to Dr. Young on May 8, 2006 (Tr. Tr. 211-

---

[3]Plaintiff presented himself to Dr. Revels in 2003 on October 1 (Tr. 241-243), October 20 (Tr. 239-240), November 21 (Tr. 237), and December 29 (Tr. 236), and in 2004 on January 8 (Tr. 235), February 4 (Tr. 234) and finally on February 13 (Tr. 232-233). Dr. Revel's office notes indicate that plaintiff failed to show up for appointments scheduled on February 31, 2004 and May 4, 2004 (Tr. 232).

[4]Dr. Young's treatment notes regarding plaintiff's July 13, 2005 office visit reflect that plaintiff complained of "left wrist pain sometimes causing some hand numbness, and occasionally radiating up his arm" and, when asked about "what [he] does," he told Dr. Young that he "works a machine that does require chronic hand And wrist movement" (Tr. 207). Dr. Young diagnosed carpal tunnel syndrom and supplied plaintiff with a left wrist brace and a prescription for Ibuprofen 800 mg (Tr. 207).

214, 293-296) and followed up with visits on July 31, 2006 (Tr. Tr. 215-219, 297-301) and October 23, 2006 (Tr. 220, 302). In 2007, plaintiff presented himself to Dr. Young on February 7 (Tr. 221-225, 303-307), May 31 (Tr. 228) and October 18 (Tr. 229-230, 310-314). Although Dr. Young described plaintiff as "obese" in each of her summaries of plaintiff's office visits (Tr. 165, 171, 174, 196, 200, 201, 207, 211, 215, 220, 223), with the exception of the visit on May 31, 2007 (Tr. 228), her treatment notes reflect only two occasions on which she included obesity in her treatment assessment/plan for the plaintiff. The first was on October 23, 2006, when Dr. Young reported:

> Obesity – The patient and I discussed his weight and the health problems with it, particularly his diabetes, hypertension, etc. I did advise him on a diabetic diet and exercise.

(Tr. 220). Plaintiff weighed 292 on his October 23, 2006 office visit (Tr. 220). The second occasion was plaintiff's next office visit on February 7, 2007, when he weighed in at 279 lbs. and Dr. Young reported:

> Morbid Obesity. The patient has been losing weight at approximately a pound a week. I strongly encouraged him and praised him for his weight loss.

(Tr. 223). Dr. Young's summary for the May 31, 2007 office visit, however, when plaintiff's weight was recorded at 315 lbs., neither describes plaintiff as obese nor makes any treatment plan or assessment concerning obesity (Tr. 228). Moreover, on no occasion do the treatment notes of Dr. Young reflect the imposition of any functional

6

limitations based on plaintiff's obesity.[5]

As stated above, the medical records indicate that plaintiff first saw Dr. Zarzour in June of 2005, at which time he was given two month prescriptions for both Lortab and Naprosyn and instructed not to take the Lortab "while he is operating heavy equipment" and that he was to "only get pain medicines from me and no other doctor at the same time" (Tr. 193 and 194). Dr. Zarzour also noted that plaintiff did not have a current MRI (Tr. 103 and 194)[6]. Plaintiff did not return to Dr. Zarzour until January 6, 2006, at which time Dr. Zarzour reported than an MRI performed on July 28, 2005, showed "a small HNP L4-L5, protrusion small T10-T11" and that plaintiff therefore suffered from a "herniated nulcleus pulposus lumbar" and "degenerative disk disease" (Tr. 192). Dr. Zarzour did not recommend surgery but, instead, prescribed Lortab and Naprosyn with instructions for plaintiff to return in six months (Tr. 192). Dr. Zarzour noted at both these office visits that plaintiff was employed as a heavy equipment operator but imposed no functional limitations or restrictions upon the plaintiff. Dr. Zarzour did not see the plaintiff again until November 21, 2006, at which time x-rays were taken which reflected "some mild degenerative changes" (Tr. 191). Dr. Zarzour again prescribed Lortab and

---

[5] Plaintiff's medical records indicate that, in 2003, Dr. Revels recorded plaintiff's weight at 300 lbs on October 1 (Tr. 242) and October 20 (Tr. 239), a period of time after which plaintiff continued to work as a heavy equipment operator.

[6] Dr. Zarzour's records contain a duplicate of his summary of plaintiff's July 22, 2005 office visit, one of which contains a notation that plaintiff failed to show up ("N/S") for an appointment scheduled for August 15, 2005 (Tr. 194) and the other containing a similar notation that plaintiff was a N/S on September 1, 2005 (Tr. 193).

Naprosyn and instructed plaintiff to return in six months (Tr. 191). It was also on November 21, 2006, that Dr. Zarzour completed a physical Capacities evaluation ("PCE") in which he opined that Plaintiff could sit for two hours at a time but could sit for six hours in an 8-hour workday, and could stand for an hour at a time but could stand for only two hours during an 8-hour workday (Tr. 188). He further opined that plaintiff could not use his arms for pushing/pulling arm controls, that he was limited in bending squatting, crawling, climbing, and reaching, and that he had various restrictions on the amount of weight plaintiff could lift (Tr. 188).[7] In the Clinical Assessment of Pain Form, Dr. Zarzour stated he had treated plaintiff since July 2005, and opined that a herniated disc was the underlying cause of plaintiff's back and leg pain (Tr. 189). He also opined that plaintiff's pain would distract him from adequately performing daily activities or work (Tr. 189). On the same form, however, Dr. Zarzour opined that plaintiff's pain, while resulting in some limitations, would not cause serious problems at work (Tr. 189). In addition, the only functional limitation he assessed with respect to pain was a limit on lifting no greater than 30 pounds (Tr. 190).

By letter dated December 4, 2007, Dr. Zarzour reported that he had last seen the plaintiff on November 21, 2006 and that plaintiff was working at that time as a heavy equipment operator (Tr. 316).

---

[7]Dr. Zarzour opined that, in an 8-hour workday, plaintiff could lift up to 5 lbs. for four hours; from 6-10 lbs. for three hours; 11-20 lbs for two hours; and 21-25 lbs. for one hour; but could never lift over 26 lbs. (Tr. 188).

C.  Other Evidence.

In his disability Report, plaintiff did not allege disability due to obesity (Tr. 100). At the hearing on November 20, 2007, plaintiff testified that the only thing that interfered with his ability to work was his degenerative disc disease which he described as "lower disk problem, blown and bulging," and "pretty bad diabetes, diabetic neuropathy in my feet and legs" (Tr. 19).[8]  Plaintiff also confirmed that, while his appointments with Dr. Young were set up every three months for his diabetes, he saw Dr. Zarzour every six months and that "basically, he just renews my medications . . . for my back" (Tr. 22-23).

The vocational expert testified that a hypothetical person with Plaintiff's age, educational level, work history, and residual functional capacity could not perform plaintiff's past work as a heavy equipment operator or carpenter, but could perform the jobs of security guard, information clerk, and usher (Tr. 29-30).

IV.  Conclusions of Law.

A.  Standard of Review.

In reviewing claims brought under the Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.1990).  Thus, a court may not

---

[8]When asked by the ALJ whether there was anything else that would interfere with his ability to work "other than your, your degenerative disk disease and your diabetes," plaintiff answered "[n]ot that I know of, sir" (Tr. 20).

decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir.1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir.1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir.1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir.1986).

    B.    Sequential Evaluation Process.

An individual who applies for Social Security disability benefits or supplemental security income must prove their disability. *See* 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven their disability. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At the first step, the claimant must prove that he or she has not engaged in substantial gainful activity. At the second step, the

claimant must prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If, however, the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity[9] and age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). *See also* Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

---

[9] Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

C.  <u>Analysis</u>.

1. **The ALJ did not err when he failed to analyze plaintiff's obesity under Social Security Ruling 02-01p.**

The ALJ indeed did not mention or analyze plaintiff's alleged obesity. However, such an omission in this case does not constitute error. The ALJ was not required to analyze plaintiff's obesity claim because plaintiff did not allege that his obesity was a disabling impairment either in his application or at the administrative hearing and because he failed to proffer any evidence of disabling limitations caused by his weight. Plaintiff did testify that he was five feet and eleven inches tall and weighed 300 pounds (Tr. 17). However, plaintiff also testified that the only thing that interfered with his ability to work was his degenerative disc disease and his diabetes (Tr. 19, 20). *See* <u>Street v. Barnhart</u>, 133 Fed.Appx. 621, 627 (11th Cir. 2005)("An 'administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'. "). *See also* <u>Harris v. Astrue</u>, 2009 WL 2868423, * 5 (M.D. Fla. Aug. 31, 2009)(ALJ's failure to address plaintiff's "obesity" was not reversible error because "Plaintiff made no claim in her application or at the hearing that her weight rendered her disabled [and] [n]o doctors, examining or otherwise, noted obesity related concerns or limitations.").

Plaintiff's references to any notation of "obesity" in plaintiff's medical record is to no avail. Not one of plaintiff's physician ever identified his weight or "obesity" as interfering with any ability to function physically. The medical evidence actually

supports a contrary conclusion inasmuch as Dr. Revels reported plaintiff's weight to be 300 pounds in October of 2003. Despite his weight, which was never significantly less than 300 pounds, plaintiff clearly continued to work until at least April of 2006 (Tr. 315) as a heavy equipment operator (Tr. 165, 171, 174, 196, 200, 201, 207, 211, 215, 220, 223).

In support of his contention that the ALJ committed reversible error in failing to analyze his obesity, plaintiff also relies solely on Social Security Ruling 02-01p,[10] but acknowledges that it applies only when obesity, either alone or in combination with other medically determinable physical or mental limitations, "limits an individual's physical or mental ability to do basic work activities." Plaintiff's Brief (Doc. 10) at 2. There is no evidence in this record that plaintiff's obesity impaired his ability to do anything. Consequently, the ALJ did not err when he failed to analyze plaintiff's obesity under Social Security Ruling 02-01p.

    2.    **The ALJ reasonably evaluated Plaintiff's residual functional capacity, and any error in his evaluation was harmless.**

---

[10]SSR 02-01p provides, in pertinent part:

> Obesity will be considered a "severe" impairment when, alone or in combination with other medically determinable physical or mental impairment(s), *it significantly limits an individual's physical or mental ability to do basic work activities*. An impairment will be found "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities.

SSR 02-01p (emphasis added).

Contrary to plaintiff's contention, the ALJ provided an appropriate rationale for his finding that plaintiff could perform light work. The ALJ based his decision on a complete review of all the relevant evidence. The responsibility for determining a plaintiff's residual functional capacity ("RFC") lies with the ALJ and is based on all of the evidence of record. *See* Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (ALJ has duty to assess the residual functional capacity on the basis of all the relevant credible evidence of record); 20 C.F.R. §§ 404.1546, 416.946 (responsibility for determining a claimant's residual functional capacity lies with the ALJ). *See also*, Foxx v. Astrue, 2009 WL 2899048, * 6 (S.D. Ala. Sep. 3, 2009)("The RFC assessment must be based on all of the relevant evidence in the case such as: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and medical source statements."), *citing* SSR 96-8p. In his decision in this case, the ALJ stated:

> After careful *consideration of the entire record*, the undersigned finds that the Plaintiff has a residual functional capacity to perform light work except that work [which] will allow no more than moderate and occasional limitations in posture and not more than occasional exposure to heights or extreme cold or hot temperatures.

(Tr. 43)(emphasis added). The ALJ then addressed the relevant evidence and, although he did not explicitly perform a function-by-function analysis of plaintiff's physical abilities to perform work activities, he did reference Dr. Zarzour's physical capacity evaluation, which addressed the activities of lifting, standing, and sitting (Tr. 44). Consequently, the ALJ's residual functional capacity assessment (ability to perform a

range of light work) implicitly contained his finding regarding plaintiff's ability to perform the physical activities of sitting, standing, walking, lifting, and carrying. *See* Hutchinson v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (ALJ may make implied findings); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) ("In light of SSR 96-8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically is able to work an eight-hour day."); Engebretson v. Astrue, 2008 WL 4845298, at *5 (S.D. Ga. Nov. 6, 2008) (ALJ finding that Plaintiff could perform light work implicitly encompassed a function-by-function analysis).

In addition, the Eleventh Circuit has held that ALJ error is harmless if the claimant is not prejudiced. *See* Battle v. Astrue, 243 Fed.Appx. 514, 522 (11th Cir. 2007)("Errors may be harmless if they do not prejudice the claimant."), *citing* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983). In the instant case, the ALJ referenced Dr. Zarzour's physical capacity evaluation, which addressed the physical functions of lifting, standing, walking, and thus implicitly conducted a function-by-function analysis of plaintiff's exertional ability to perform work activities from which he determined plaintiff retained the residual functional capacity to perform a range of light work. Plaintiff fails to point to any evidence that would show he was prejudiced by the ALJ's implicit function-by-function analysis of his ability to perform a range of light work. *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (burden lies with the claimant to prove disability); 20 C.F.R. §§ 404.1512, 416.912 (it is the claimant's responsibility to present evidence to

prove their disability). As such, any error the ALJ may have committed by not explicitly setting forth a function-by-function analysis of plaintiff's ability to perform the exertional requirements of work activities was harmless.

   3.  **The ALJ reasonably discounted Dr. Zarzour's opinions and did not substitute his own opinion for that of Dr. Zarzour.**

"The ALJ must generally give the opinion of a treating physician "substantial or considerable weight" absent a showing of good cause not to do so." Newton v. Astrue, 297 Fed.Appx. 880, 883 (11th Cir. 2008). *See also*, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (a treating physician's opinion must be given substantial weight unless good cause is shown to the contrary). The ALJ may also devalue the opinion of a treating physician where the opinion is contradicted by objective medical evidence. Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir.2003) (per curiam), *citing* Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981)(holding that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion"). (citation omitted). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir.2004). If an ALJ elects to disregard the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing. Id.

The treating physician rule does not apply to a physician who bases his opinions of

a claimant's limitations on a limited number of visits. *See* Swann v. Astrue, 2008 WL 81500, at *8 (N.D. Fla. Mar. 26, 2008) (the treating physician rule involves the physician's familiarity with his patient, it does not apply to a physician who bases his opinion of a claimant's limitations upon a single visit). The record reflects that Dr. Zarzour saw plaintiff only three times over a one-and-a-half-year period, and his treatment records further reflect that he conducted only one physical examination prior to completing Physical Capacities Evaluation and Clinical Assessment of Pain forms during November 2006 (Tr. 188-93). In addition, plaintiff testified that Dr. Zarzour only refilled his medication (Tr. 22-23). As such the "treating physician rule" should not apply to Dr. Zarzour's opinions, because he could not provide a detailed longitudinal picture of plaintiff's impairments. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (a treating physician is more likely able to provide a longitudinal picture of a claimant's impairments). *See also*, Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (doctor who saw claimant on only one occasion is not considered a treating physician); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (the rule giving great weight to a physician's opinion does not apply where the physician has examined the patient only one time).

  Here, the ALJ discounted, with good cause, Dr. Zarzour's opinion because it was inconsistent with his own records as well as the record as a whole. Dr. Zarzour's treatment records (Tr. 191-93), reflect minimal objective findings, and fail to include any restrictions or functional limitations. *See* Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006)(ALJ permitted to disregard a treating physician's opinion regarding limitations,

17

when no limitations were stated in the physician's treatment notes). The extreme limitations in Dr. Zarzour's opinion are not supported by any objective findings and underscore the inconsistency between his treatment records and his opinions. *See,* Phillips, 357 F.3d at 1240 (good cause exists when the treating physician's opinion was inconsistent with the doctor's own records). In addition, Dr. Zarzour's opinions are inconsistent with the other objective medical evidence of record. For example, Dr. Young, who conducted numerous physical examinations, never assessed any functional limitations (Tr. 163-75, 196-226, 228-29, 242-56, 278-308, 310-14), and Dr. Revels, who based his findings on the results of a functional capacity evaluation, only limited plaintiff to occasionally lifting 50 pounds, frequently lifting 25 pounds; frequent sitting, standing, and stooping; occasional repetitive squatting; occasional stooping and bending; occasional turning and twisting of the lower back; occasional kneeling or crawling; occasional reaching overhead, side to side, and down, frequent reaching out to the side; and use of his hands and feet without restriction (Tr. 155).

Dr. Zarzour's Clinical Assessment of Pain form is also internally inconsistent (Tr. 189). While he opines that plaintiff's pain will distract him from adequately performing daily activities or work, he further opines that plaintiff's pain will not cause serious problems at work and will not be present to such an extent as to prevent adequate functioning in work-related tasks (Tr. 189). *See,* Kerwick v. Comm'r of Soc. Sec., 154 F. App'x 864, 864 (11th Cir. 2005) (where there are internal inconsistences, a specialist's opinion deserves less deference), *citing* Guilliams v. Barnhart, 393 F.3d 798, 803 (8th

Cir. 2005)).

It is the task of the ALJ–not the Court–to examine the evidence and resolve conflicting reports. Powers v. Heckler, 738 F.2d 1151, 1152 (11th Cir. 1984) (per curiam). In this case, the ALJ reasonably discredited Dr. Zarzour's opinions after carefully examining the record as a whole,. *See,* Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (an ALJ is free to reject the opinion of any physician where the evidence supports a contrary conclusion). Then, based on the substantial evidence of record, including the treatment records of Dr. Revels, Dr. Young and Dr, Zarzour, the ALJ determined that plaintiff retained the residual functional capacity to perform a range of light work. There is no merit to plaintiff's contention that the ALJ substituted his own opinion for that of his treating physician when he assessed plaintiff's residual functional capacity. Plaintiff's premise is based on his failure to acknowledge the treatment records of Dr. Revels, Dr. Young and even Dr, Zarzour which are inconsistent with Dr. Zarzour's opinion in his Physical Capacity Evaluation form and Clinical Assessment of Pain form. Plaintiff has also failed address the obvious internal inconsistency in the opinion set forth by Dr. Zarzour in the Clinical Assessment of Pain form.

This court is limited in its inquiry and is not empowered to reweigh the evidence. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986) (even if some contrary evidence exists, the Commissioner's decision must be affirmed if supported by substantial evidence). Based on the record, the findings of the ALJ were supported by

substantial evidence.

      V.    <u>Conclusion</u>.

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby **AFFIRMED**.

**Done** this 4th day of August, 2010.

                                  /s/ Katherine P. Nelson
                                  **KATHERINE P. NELSON**
                                  **UNITED STATES MAGISTRATE JUDGE**